IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-23142 MER |
| PAUL C. HARVEY ) | |
| BEVERLY N. HARVEY, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| PAUL C. HARVEY ) | Adversary No. 11-1958 MER |
| BEVERLY N. HARVEY ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| EDUCATIONAL CREDIT ) | |
| MANAGEMENT CORPORATION, et al., ) | |
| ) | Signed/Docketed |
| Defendants. ) | August 20, 2013 |

**ORDER**

    THIS MATTER comes before the Court on the Complaint filed by Debtors Paul Harvey ("Paul") and Beverly N. Harvey ("Beverly") (collectively, the "Harveys") against Educational Credit Management Corporation ("ECMC"). The Court has reviewed the pleadings, heard the testimony and arguments presented at trial, and hereby makes the following findings of fact and conclusions of law.

**JURISDICTION**

    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(a) and (b) and 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), because it involves the dischargeability of particular debts.

**BACKGROUND FACTS**

    The Harveys filed their voluntary Chapter 7 petition on June 11, 2011, and their discharge entered October 3, 2011. They filed their Complaint in this matter on December 8, 2011. ECMC was not a named defendant, but was

allowed to intervene as the assignee and current holder of the student loan debt owed by Beverly.[1]

Beverly is 41 years of age and earned a bachelor's degree in social work from the University of Las Vegas in 2000, financed, in part, by student loans which were subsequently consolidated.  In 2003, Beverly pursued a graduate degree at the University of Denver, also financed with loans.  She thereafter consolidated her previous loans with the loans for the graduate studies.  ECMC holds the twice-consolidated loans and asserts the total amount owed as of January 16, 2012, was $86,917.42, plus interest accruing at the rate of $6.36 per day.

Beverly served in the United States Navy as a carpenter from 1989 to 1995 when she was discharged.  From 1997 through 2006, Beverly held various jobs, but is presently unemployed.  Beverly is under medical care and is taken to the hospital regularly by her husband.  She has memory problems and requires assistance to remember the correct dosage of her prescribed medication.  She suffers from migraine headaches and will require a knee replacement in the future.  She tried to work in the past, but over the last two years she gave up looking for employment due to the existing medical problems.  Beverly has two felony convictions on her record.  She served the imposed incarceration and has fully paid the ordered restitution.

Paul also suffers with medical difficulties as a result of a back injury which limits his physical activities.  Finally, the Harveys have four children, one of whom has severe medical problems requiring ongoing medical care and home monitoring.

Paul earns approximately $50,000 per year as a crime analyst, and Beverly receives approximately $350 per month in veteran's disability benefits, resulting in combined household income of $54,200 per year.  Their children are eligible for the free breakfast and reduced cost school lunch program at their school.  The family qualifies to visit the Larimer County food bank twice per week and the children are clothed with hand-me-downs from their neighbors.

---

[1] The Complaint's named defendants were Citibank, Citibank New York State NA, LVNV Funding, LVNV Funding LLC, United States Department of Education National Payment Center, NCO Financial Systems, Inc., STU LN Trust, and University of Nevada.  On August 13, 2013, the Clerk issued an entry of default under FED. R. BANKR. P. 7055(a) as to each of those defendants.

## DISCUSSION

11 U.S.C. § 523(a)(8)[2] provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The Tenth Circuit has joined several other circuits in adopting the three-pronged test for determining the statutory "undue hardship" requirement as first enunciated by the Second Circuit Court of Appeals in the case of *Brunner v. New York State Higher Education Services Corp. (In re Brunner)*, 831 F.2d 395 (2nd Cir. 1987).[3]  According to *Brunner*, undue hardship exists when the evidence shows:  1) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for the debtor and the debtor's dependents if forced to repay the loan; 2) additional circumstances indicate this state of affairs is likely to persist throughout the period of repayment of the loan; and 3) the debtor has made a good faith effort to repay the loans.[4]  The debtor has the burden to prove all three elements of the *Brunner* Test have been satisfied.[5]

---

[2]  Unless otherwise specified, all future statutory references in the text are to Title 11 of the United States Code.

[3]  *Educational Credit Management Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302, 1309 (10th Cir. 2004) (adopting *Brunner*).  The Tenth Circuit reaffirmed the use of the *Brunner* test in 2008.  *Roe v. College Access Network*, 295 Fed.Appx. 927, 929-30 (10th Cir. 2008).

[4]  *Brunner*, 831 F.2d at 396.

[5]  *Brown v. Sallie Mae, et al. (In re Brown)*, 442 B.R. 776, 781 (Bankr. D. Colo. 2010).

**A.   Can the Harveys maintain a minimal standard of living if they are forced to repay the loans held by ECMC?**

As recognized by the Tenth Circuit in *Polleys*, the first element of the *Brunner* Test comports with the legislative policy behind § 523(a)(8).  Student loans "should not as a matter of policy be dischargeable before [the debtor] has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt."[6]  In evaluating this element, bankruptcy courts should inquire whether the debtor can maintain a minimal standard of living while repaying the debt after considering "all facts and circumstances" bearing on the debtor's current and future financial situation and efforts to repay.[7]  This evaluation necessarily entails an analysis of all relevant information, including the health of the debtor and of any dependents, and the debtor's education and skill level.[8]

The evidence in this case clearly shows the Harveys depend upon Paul's income, which may increase only slightly in the foreseeable future.  In addition, the Harveys demonstrated they have significant medical issues which prevent Beverly from obtaining any appreciable amounts of income over and above her monthly disability payments.  Further, caring for the severe medical issues of their child requires additional expenditures and time.

The Harveys' bankruptcy schedules list a residence valued at $199,000, with liens in the amount of $172,000.  They also list an interest in a parcel of land in New Mexico of negligible value belonging to one of their children.  They have two older model vehicles and other personal property of little value.  They list approximately $650,000 in unsecured debt.  Paul's income varies between $4,400 to $4,500 per month, and the household expenses leave approximately $60 per month in disposable income – a very small cushion for unexpected expenses.

In addition, none of the Harveys' expenses of the Harveys are unreasonable.  Based upon their current income and expenses, it would be virtually impossible for the Harveys to repay the student loans held by ECMC and maintain their current minimal standard of living.  Accordingly, the first prong of the *Brunner* test is satisfied.

---

[6]   *Polleys*, 356 F.3d at 1309-1310.

[7]   *Id.*

[8]   *Id.*

**B.     Is this state of affairs likely to persist throughout the period of repayment of the loan?**

In *Polleys*, the Tenth Circuit elaborated on the requirements for the second element of the *Brunner* Test. In order to determine whether "additional circumstances" exist, "a realistic look must be made into [the] debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like."[9]  "[C]ourts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism, and the inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan."[10]

Although there was no expert testimony presented by either side, the Court agrees with the Bankruptcy Court for the Southern District of Texas:

> When relying on a medical condition, a debtor is not required to prove the existence of a completely debilitating medical condition in order to establish an "undue hardship" under § 523(a)(8). *See McGinnis v. PHEA (In re McGinnis)*, 289 B.R. 254, 256 (Bankr. M.D. Ga. 2002). If a debtor can demonstrate that some condition will, in all likelihood, inhibit the longterm ability to repay the student loan debt, the second prong of the *Brunner* test is satisfied. Moreover, a debtor is not required to present expert testimony to corroborate his own testimony about his health. *See Barrett v. Educ. Credit Mgmt. Corp. ( In re Barrett)*, 487 F.3d 353, 359–60 (6th Cir. 2007); *Educ. Credit Mgmt. Corp. v. Mosley ( In re Mosley)*, 494 F.3d 1320, 1325 (11th Cir. 2007). The Court may rely on the debtor's testimony and any collaborating evidence that is offered. *Id.*[11]

Like the court in *O'Donohoe*, this Court can rely on its observation of the comportment and demeanor of the Harveys.[12] From such observation, this Court concludes the medical conditions suffered by Paul, Beverly and their child are legitimate and place severe limitations on the family's ability to maintain a minimal standard of living.

---

[9] *Polleys*, 356 F.3d at 1310.

[10] *Id.* (internal quotation marks omitted). *See also Alderete*, 412 F.3d at 1205.

[11] *O'Donohoe v Panhandle-Plains Higher Education Authority, et al. (In re O'Donohoe)*, 2013 WL 2905275, at *4 (Bankr. S.D. Tex. June 13, 2013) (Slip Copy).

[12] *Id.* at *2.

The Court finds the Harveys' prospects for increasing their income over the foreseeable future are dim. There is every indication their medical conditions will not improve, and they will continue to rely on Paul's modest income, which shows little, if any, chance for a meaningful increase. Moreover, one of the Harvey's children has severe medical problems and no evidence was presented to indicate these problems will abate at any time in the future.

In this case, therefore, the evidence demonstrates the hardship of the Harveys will continue throughout the loan repayment period, and will prevent them from repaying the student loans while maintaining a minimal standard of living for herself or her dependants. To find otherwise would require the Court to engage in unsupported speculation and the type of "unfounded optimism" frowned on by *Polleys*.

**C. Have the Harveys made a good faith effort to repay the loans held by ECMC?**

As best stated by the Tenth Circuit in *Polleys*:

[A]n inquiry into a debtor's good faith should focus on questions surrounding the legitimacy of the basis for seeking a discharge. For instance, a debtor who willfully contrives a hardship in order to discharge student loans should be deemed to be acting in bad faith. Good faith, however, should not be used as a means for courts to impose their own values on a debtor's life choices.[13]

ECMC suggests the Harveys' decision to have a fourth child after incurring the student loan debt represents a personal choice which intentionally creates or contributes to their hardship.[14] In *Pratt*, the United States District Court for the Southern District of Texas found the debtors' decision to have three more children after incurring student loans, for a total of six children, did not prevent the debtor wife from making payments on her student loan obligation for a significant portion of the repayment periods.[15]

However, the Pratts were in very different circumstances than the Harveys. Both Pratts were young and at the start of their careers, and they and all their children were healthy. The *Pratt* Court pointed out the older children would reach majority during the repayment period, and could possibly assist in

---

[13] *Polleys*, 356 F.3d at 1310.

[14] *Pratt v. ECMC (In re Pratt)*, 375 B.R. 753, 761 (S.D. Tex. 2007).

[15] *Id*.

caring for the younger children, allowing Mrs. Pratt to obtain at least part-time employment.[16]  In stark contrast, the Harveys are middle aged, and both have undisputed medical limitations which will persist into the indefinite future.

For the reasons stated above, the Court finds the Harvey's decision to have another child does not indicate a lack of good faith in seeking to discharge Beverly's student loans.  For ECMC to assert otherwise urges the Court to invade the Harveys' privacy and impose ECMC's values on the Harveys' life choices.

ECMC also points to Beverly's prior criminal convictions as evidence her financial problems were her own doing.  The evidence regarding these convictions is very sparse, but Beverly and Paul confirmed the required restitution had been paid and the required incarceration served.  The cases cited by ECMC offer no support, as these cases involved debtors who were actually incarcerated at the time they sought to discharge their student loans,[17] and the debtors had their basic living expenses paid by the state while they were in prison.  Moreover, there is no indication those debtors paid any restitution.  Further, the debtors in *Watson* and *Looper* did not have the sort of medical problems experienced by Beverly and her family.  Those medical issues will prevent any appreciable increase in the Harvey's income for the foreseeable future, and would have done so regardless of the payment of restitution by Beverly.  Therefore, Beverly's prior criminal convictions have no impact on the *Brunner* test in this case.

ECMC further asserts Beverly has not made a good faith effort to repay the loan because she has not applied for either the William D. Ford Federal Direct Loan Program ("Ford Program"), or the Income-Based Repayment ("IBR") program.  ECMC argues the Harveys' reported income would likely qualify Beverly for a repayment of $-0- per month under the IBR, until the end of a twenty-five year repayment period, when the remainder of the loan would be forgiven.  However, Paul's testimony, which the Court finds credible, contradicts this argument.  He stated the Harveys each filled out the forms for the IBR program, even though the form itself stated loans in default, such as their loans, would make them ineligible for the program.[18]  Paul's application was rejected,

---

[16]  *Id*. at 762.

[17]  *Watson v. Sallie Mae, et al. (In re Watson)*, 2012 WL 5360949 (Bankr. D. Kan. Oct. 30, 2012) (Slip Copy); *Looper v. United States Department of Education, et al. (In re Looper)*, 2007 WL 1231700 (Bankr. E.D. Tenn. Apr. 25, 2007) (Not Reported in B.R.).

[18]  *See* ECMC's Exhibits A and C, informing the Harveys' counsel of the IBR.  The Court also notes it appears the Harveys' counsel may have been made aware of the Ford Program, but it is unclear what communications he may have had with his clients regarding the program.

and the Harveys never received a response to Beverly's application.  Paul had never heard of the Ford Program until the day of the trial.

In this matter, Beverly seeks discharge of her student loans approximately nine years after she obtained her bachelor's degree and eight years after the consolidation of her loans during her graduate work, as opposed to the mere ten months of the debtor in *Brunner*.  This is another factor contributing to the finding the Harveys have made a good faith effort to repay the loans held by ECMC.  For the above reasons, therefore, the Court finds the Harveys have made a good faith effort to to repay Beverly's student loans.

## CONCLUSION

Based on the *Brunner* Test, the Harveys have met their burden of showing 1) they cannot maintain a minimal standard of living for themselves and their dependents if they are forced to repay the student loans held by ECMC; 2) circumstances exist which indicate this state of affairs is likely to continue for a significant portion of the loans' repayment period; and 3) the Harveys have made a good faith effort to repay the loans.  ECMC did not produce evidence sufficient to rebut the Harveys' case.  Accordingly, it is

ORDERED that the student loan debts held by ECMC are hereby discharged under 11 U.S.C. § 523(a)(8).

Dated August 20, 2013                                    BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　　　　　Michael E. Romero
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge